## Keeler & Co. *versus* Schmertz *et al.*

*Mutual and dependent covenants, discussed.—Action by vendee must be preceded by tender of stipulated price.*

In an agreement between vendor and vendee to pay for an article "so soon as it shall have been delivered," the stipulations are mutual and dependent: and on failure of vendor to deliver, the vendee cannot maintain an action for breach of contract without proof of a tender of the price to be paid, when performance was demanded.

ERROR to the Common Pleas of *Allegheny county.*

This was an action of *assumpsit* brought, December 1862, by Robert C. Schmertz and James Blakely, doing business as

[Keeler & Co. *v.* Schmertz *et al.*]

Schmertz & Blakely, against J. F. Keeler, W. A. McClurg, and —— Johnson, partners trading as J. F. Keeler & Co. The plaintiffs claimed under the following ·contract:—

"Pittsburgh, Sept. 18th 1862.

" Received of Schmertz & Blakely, their notes at four months, with interest, for $200. We agreeing to furnish forty barrels of white oil that will. stand a temperature of 120. Fifteen barrels of said oil having been delivered in store this day per agreement. Balance of said oil to be paid for so soon as all the oil shall have been delivered. Said oil to cost 25 cts. per gallon, and $1$\frac{50}{100}$ per package. Packages to be returned and paid for at the rate of $2$\frac{35}{100}$ each. Said oil to be exported.

J. F. KEELER & Co."

The remaining twenty-five barrels of the oil were not delivered.

On the trial, the plaintiff read the following specification of his claim, which had been filed with his *præcipe* under a rule of court which provided that if such statement be filed, the material averments therein not directly traversed or denied by the affidavit of defence, shall be taken as admitted:—

That under and by virtue of a contract in writing, between said plaintiffs and said defendants, a true copy whereof is hereto annexed and made part of the affidavit, wherein the said.defendants promised.and agreed to sell and deliver unto said plaintiffs forty barrels of white oil, that would stand a temperature of 120°; fifteen barrels of lard oil were then delivered to said plaintiffs, under said agreements; and the residue of said oil, to wit, twenty-five barrels, to be delivered upon demand, free and clear of all the excise tax, for the purpose of exportation by plaintiffs, at and for the following prices, to wit: 25 cents per gallon, if delivered in barrels, and 50 cents per package for said oil delivered in packages; the packages to be paid for by the defendants, at the rate of 35 cents each. In consideration whereof, the said plaintiffs promised and agreed to deliver to said defendants their (plaintiffs') promissory note, at four months from date of said contract, with warrant, for the sum of $200, and pay the residue of the price of said oil, or the rate aforesaid, when all the oil aforesaid was delivered in plaintiffs' store. And said plaintiffs further say, that they did deliver to defendants, on the 18th· day of September 1862, their certain promissory note, to defendants' order, at four months, for the sum of $200; and said plaintiffs have at different times since the date of said contract, demanded from said defendants the residue of said oil; and on the 21st day of November 1862 caused a written notice to be served on them, demanding the delivery of the residue of said oil, to wit, twenty-five barrels; but they, the said defendants, have wholly refused to deliver the residue, or any part thereof.

[Keeler & Co. *v.* Schmertz *et al.*]

Affiant further says that the residue of said oil agreed to be sold as aforesaid, and which defendants refused to deliver, amounts to eight hundred gallons, which, at the contract price of 25 cents per gallon, amounts to the sum of $200 for said oil, and $37.50 for said barrels, which said plaintiffs were always ready and willing to pay defendants, upon delivery. That oil of like quality and temperature is now worth in the market the sum of 80 cents per gallon, or in packages the sum of 85 cents per gallon; whereby the difference of $442.50 has accrued to the plaintiffs, by reason of the promises which the said defendants now are indebted and owe the plaintiffs, and further saith not.

The court below, on motion of defendants' counsel, allowed defendants to file a supplemental affidavit of defence, wherein they averred "that the oil was sold subject to the tax, and that at the time of the demand it was not worth more than 50 cents per gallon."

The court granted leave to file this affidavit, but made an order "that the same should not be taken to require plaintiffs now to go into proof of any material facts averred in their affidavit of claim, and not previously denied, before they had concluded."

The defendant offered to prove by oilmen, experts, that the words in the agreement, "said oil to be exported," meant, in the terms of the trade, that the tax was to be paid by the purchaser; to which plaintiffs' counsel objected. The court below sustained the objection and rejected the offer.

When the testimony was closed the defendants requested the court to instruct the jury,

1. That the demand for the oil was not made in a reasonable time, therefore plaintiffs cannot recover.

2. That defendants having tendered the oil January 15th 1863, which was refused by the plaintiffs, the plaintiffs cannot now recover anything more than costs.

3. That as there was no time fixed for the delivery of the oil, the price at or about the time of the agreement is the price to fix the damages.

4. That plaintiffs could not wait until oil advanced, and then make a demand and claim damages at that price.

5. That by the terms of the agreement the oil was sold subject to the tax.

6. The plaintiffs not having proved that they made a tender of the price of the oil at the time of demand, they cannot recover.

The court below answered the points as follows:—

"1. Negatived. I think that upon a fair construction of the contract, the fact that the vendor did not deliver, nor the vendee demand the oil, for two months and three days, without other evidence, will not warrant the inference that the contract was

[Keeler & Co. *v.* Schmertz *et al.*]

either rescinded or abandoned. I think the delay was not so great as to warrant any such inference, and I will not therefore submit it as a question to the jury. '

" 2. Negatived.

" 3. Negatived. Under this contract the vendors might have delivered at any time after the contract was made. If they had done so it would have relieved them from further responsibility. Not doing so, in contemplation of the contract, the goods being deliverable in parcels, as long as the vendee made no demand, it cannot be inferred the contract was broken by the vendor; but so soon as a demand was made by the vendees, and a refusal to deliver by the vendor, the contract was broken, and it is as of time of breach of contract, the damages are fixed. Non-compliance with a demand to deliver, and no proposal to comply till after suit brought, it is too late then for defendant to retrieve his position. So soon as a demand was made, and it appeared the defendant had no intention of immediate compliance, the plaintiffs had a right to regard the contract as broken, and make their arrangements accordingly.

" 4. Negatived. They might do so, and might have supposed it was an obligement on their part not to demand compliance with the contract until the vendor found it convenient to perform. As the vendor had it in his power to perform without asking the vendee's leave, the vendee might well suppose it was for the vendor's convenience the delay was incurred. No demand was necessary to enable vendor to deliver, and relieve himself of the risks of fire or leakage, or a rise in prices.

" 5. Negatived. This, I take it, refers to the expression in the contract—' said oil to be exported,' which means this (if it means anything), viz.: That the vendors or manufacturers having paid the internal revenue tax, or ten cents per gallon, or secured it, claimed or reserved to themselves the drawback consequent on exportation; and that it was therefore the duty of the vendee under the contract, to export the oil so as to enable the vendor or manufacturers to make out their claim to the drawback; but as to the fifteen barrels delivered, we have no evidence that it has not been exported, to make it a set-off or equitable defence here to the damages claimed for non-delivery of the residue. The defendant should show that the plaintiff has not complied with his contract in that respect, if he predicates anything upon it. And as to the twenty-five barrels not delivered, the defendants can claim nothing from the fact that it was not exported by plaintiffs. The plaintiffs bought for exportation, and whatever they could have obtained for it for exportation at the time of demand made, is the criterion by which the damages are to be governed.

" 6. It was not necessary for plaintiffs to tender the price

[Keeler & Co. v. Schmertz *et al.*]

before the defendants had complied, or at least showed they were ready and willing to deliver the last of the oil."

Under these instructions there was a verdict and judgment for the plaintiff. This writ was then sued out by the defendants, who assigned for error the rejection of the evidence of experts above mentioned, and the refusal of the court below to affirm the points submitted.

*C. B. M. Smith*, for plaintiffs in error.

*Kirkpatrick & Mellon*, for defendants in error.

The opinion of the court was delivered, November 5th 1863, by

Thompson, J.—The contract out of which this dispute has arisen, presents a clear case of mutual and dependent stipulations, to be performed concurrently. "The balance of said oil," says the contract, "to be paid for so soon as all the oil shall have been delivered." This is an equivalent expression to saying "the oil to be paid for on, or when, it shall be delivered." Adams *v.* Williams, 2 W. & S. 227, rules such stipulations to be mutual and dependent.

In such case it is the duty of the party seeking to enforce performance by the other party, to make performance on his own part a condition precedent, and tender or offer performance of it when he demands performance by the other side : Cassel *v.* Cook, 8 S. & R. 268 ; Adams *v.* Williams, 2 W. & S. 227 ; Bredin *v.* Agnew, 3 Id. 300 ; Wright *v.* Smith, 4 Id. 527 ; Henry *v.* Raiman, 1 Casey 354, and Williams *v.* Bentley, 3 Id. 294. It is evident not only from the words used, but also from the fact that the agreement was not signed at all by the plaintiffs, that payment for the oil was to be a cash payment, on and concurrent with delivery. It was therefore the duty of the plaintiffs, in accordance with all the cases, in order to maintain their action, to make an offer of payment of the money when they demanded performance on the other side, and to have averred and proved that they were ready and willing to pay on delivery of the oil. This is not strictly a tender, as was said by the late Chief Justice Lewis, of this court, in Henry *v.* Raiman and Williams *v.* Bentley, but it is what the party was bound to do, in order to maintain his action, as ruled by those cases. See Waggenblast *v.* McKean, not reported. The plaintiffs omitted this duty, and consequently they were not in a condition to enforce performance, or recover damages for non-performance by the defendants. We see no other errors in the case, but for the erroneous charge of court in this particular,

The judgment is reversed.