## Barnes v. Rea, Appellant.

219    279
f219    292
219    279
f227   ³405

*Contract—Option—Construction—Contention of parties.*

Whether an instrument in writing transferring an interest in real estate shall be construed as an absolute conveyance, or only an agreement to convey, or an option to purchase, depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and when that is doubtful, from the circumstances attending it.

An option is an unaccepted offer to sell and convey within the time fixed and upon the conditions set forth in the written agreement.

An option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee.

An owner of coal agreed in writing to sell and convey the same to another party for a certain sum per acre, one-fourth of the purchase money to be paid at the time of the delivery of the deed and the balance in three equal annual payments. The agreement further contained this provision: "It is expressly understood and agreed that if the first payment aforesaid is not made" on a day named "or within ten days thereafter, this agreement shall be considered as rescinded and neither party shall be bound thereby." The optionee served on the optionor a written notice of his election to purchase the coal within a time named, but did not pay or tender within such time the first instalment of the purchase money. Long afterwards he made a tender of the installment, and on a subsequent day the owner acknowledged the original option agree-

ment, and the agreement was duly recorded. *Held,* (1) that the agreement was an option and not a contract to sell coal; (2) that the service of notice was not an exercise of the option in accordance with the agreement; (3) that the only way in which the option could be exercised was by payment or tender of one-fourth of the purchase money within the time specified; and (4) that the subsequent act of the owner in acknowledging the original agreement indicated that the original agreement was still in force, and that he had waived his right to declare a forfeiture.

Argued Oct. 21, 1907. Appeal, No. 169, Oct. T., 1907, by defendants, from decree of C. P. Greene Co., No. 73, In Equity, on bill in equity in case of James R. Barnes v. L. M. Rea, J. M. Hustead and I. W. Semans. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Affirmed.

Bill in equity for specific performance.

The court found the following facts:

L. M. Rea, one of the defendants, was seized in fee of a tract of land situate in Cumberland township, in Greene county, Pennsylvania, containing ninety-five acres, more or less, and being so seized thereof on June 2, 1899, entered into an agreement with J. M. Hustead and I. W. Semans, two other defendants named in this bill, to sell and convey, by deed with an abstract of title, to said Hustead and Semans, their heirs and assigns, all the nine-foot or Pittsburg vein of coal under the said tract of land, with certain mining rights, and reserving the privilege of operating for oil and gas on the same, which agreement and contract was in writing, which is in the words and figures following, to wit:

" This agreement witnesseth, that L. M. Rea, of Greene county, Pa., hereby agree to sell and convey to J. M. Hustead and I. W. Semans, their heirs and assigns, all the nine-foot or Pittsburg vein of coal in and under that certain tract of land in Cumberland township, Greene county, Pa., bounded by lands . of Swan heirs, R. L. Barly, C. A. Rea, Bell heirs and others, and containing ninety-five (95) acres, more or less: Giving the first parties the privilege of boring for oil and gas on said farm, with the right to mine and remove all and every part of the same, without being required to provide for the support of the overlying strata or surface, and without being liable for any

injury to the same or to anything therein or thereon by reason thereof, and with all reasonable privileges for ventilating, pumping and draining the mines, and the right to keep and maintain roads and ways in and through said mines forever, for the transportation of the said coal, etc., and of coal from and to other lands. For which the party of the second part, their heirs or assigns, shall pay $60.00 per acre, for each and every acre, as follows : One-fourth of the purchase money at the time of making and delivering of said deed, and the balance in three equal annual payments from the date of said deed, with interest at the rate of five per cent. per annum on deferred payment. An abstract deed with a certificate of title to be made to said J. M. Hustead and I. W. Semans, their heirs or assigns, when the first payment is made, and the others are secured by . . . . mortgage on the property hereby sold. The . . . . of the second part . . . . heirs or assigns, shall have the right to take . . . . by paying . . . . per acre therefor at the time of taking, and when a deed is made. It is expressly understood and agreed that if the first payment aforesaid is not made on October 2, A. D. 1899, or within ten days thereafter, this agreement shall be considered as rescinded, and neither party shall be bound thereby."

On September 6, 1899, for value received, J. M. Hustead and I. W. Semans assigned, transferred and set over to James R. Barnes, his heirs and assigns, all their right, title, interest, property, claim and demand whatsoever, of, in, to or out of the said agreement.

On October 11, 1899, James R. Barnes caused a notice in writing to be served upon L. M. Rea to the effect that the contract had been assigned by Hustead and Semans to him, and further notifying him that he accepted to purchase said coal under the terms specified in said contract, which notice was in words and figures as follows :

" Mr. L. M. Rea : I hereby notify you that the option dated June 3, 1899, given by you to J. M. Hustead and I. W. Semans for the coal therein mentioned in and under the tract of land in said option described, has been assigned to me by said Hustead and Semans, and I hereby further notify you that I accept to purchase said coal under the terms specified in said option.

" October 3, 1899.    Jas. R. Barnes." .

On June 20, 1900, said James R. Barnes, plaintiff, caused a tender of $1,500 in gold to be made to defendant, and demanded a deed for said coal and mining rights, which money so tendered the said L. M. Rea, defendant, refused to accept, and he also refused to make, execute and deliver a deed and abstract of title, both of which (deed and abstract) he had agreed and bound himself to make.

July 20, 1900, the said L. M. Rea, defendant, in due form of law, acknowledged the said contract to be his act and deed, and desired the same to be recorded as such.

The court entered a decree for specific performance.

*Error assigned* was the decree of the court.

*F. W. Downey*, with him *R. F. Downey*, for appellant.— The instrument in suit is not an option.

In the matter at issue the optionees did not sign the instrument, and therefore there was no obligation on either the optionees or their assignee, the plaintiff, to buy. The obligation was entirely upon the defendant, and, therefore, the instrument was an option and not a contract : McMillan v. Phila. Co., 159 Pa. 142 ; Yerkes v. Richards, 153 Pa. 646 ; Swank v. Fretts, 209 Pa. 625 ; Verstine v. Yeaney, 210 Pa. 109 ; Russell v. Stewart, 204 Pa. 211 ; White v. Siorski, 50 P. L. J. 142 ; Dauchey v. Pond, 9 Watts, 49 ; Vito v. Birkel; 209 Pa. 206.

An acceptance of an option to be good must be such as to conclude an agreement or contract between the parties. An offer to sell imposes no obligation until it is accepted according to its terms : Henry v. Black, 213 Pa. 620.

*James J. Purman* and *Thomas S. Crago*, for appellee.—Before the vendor can claim rescission of the agreement for failure of the vendee to pay " one-fourth of the purchase money," vendor must present a deed, for the money is payable " at the time of making and delivering of said deed : " Vankirk v. Patterson, 201 Pa. 90.

Notice of rescission was necessary : Miller v. Phillips, 31 Pa. 218 ; Forsyth v. Oil Co., 53 Pa. 168.

Under the contract he was bound to present a deed and show a clear title, and having failed, or being unable to do

this, he cannot claim a rescission : Vankirk v. Patterson, 201 Pa. 90 ; Douglas v. Hustead, 216 Pa. 292.

Rea acknowledged the contract; this was in affirmance of it and estops him : Cover v. Manaway, 115 Pa. 338 ; Com. v. Haines, 97 Pa. 228 ; Heilman v. Kroh, 155 Pa. 1 ; McMullin v. Glass, 27 Pa. 151 ; Richart v. Wisner, 2 Kulp, 395 ; Vankirk v. Patterson, 201 Pa. 90. ·

OPINION BY MR. JUSTICE ELKIN, January 6, 1908:

This is a bill in equity asking for the specific performance of a contract in writing.  At the beginning of our inquiry it is necessary to determine whether the agreement is an option to purchase, or an absolute contract to convey.  The learned court below has found as a conclusion of law that the agreement entered into between the parties was not an option to purchase, but a completed contract of sale, containing mutual and dependent covenants on the part of the vendor and vendee from the date of its execution.  We cannot accept this as the proper interpretation of that instrument.  Rea was the owner of certain real estate underlaid with coal.  Hustead and Semans were engaged in the business of taking options on coal lands.  Among others they secured the agreement, the specific performance of which is asked in this proceeding.  It was under seal and signed by appellant.  It is perfectly clear that all of the interested parties considered it an option to purchase and not an absolute contract of sale.  It was so treated by Rea, party of the first part, and by Hustead and Semans, parties of the second part, and by their assignee, Barnes, who, in order to exercise his option before its expiration, served upon appellant a written notice of his election to purchase the coal upon the terms specified in the agreement. It is true Rea agreed to sell and convey to Hustead and Semans, their heirs and assigns, all of the Pittsburg vein of coal underlying the tract of land described in the agreement upon the terms and conditions therein contained.  If these words stood alone, the intention of the parties to enter into an absolute contract to convey would be apparent, and under such circumstances the covenants would be considered mutual and dependent from the date of the execution of the agreement. They, however, do not stand alone, and the intention of the

parties must be gathered from a proper construction of the whole instrument. Whether an instrument in writing transferring an interest in real estate shall be construed as an absolute conveyance, or only an agreement to convey, or an option to purchase, depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and, when that is doubtful, from the circumstances attending it: Stouffer v. Coleman, 1 Yeates, 393 ; Neave v. Jenkins, 2 Yeates, 107 ; Bear v. Whisler, 7 Watts, 144 ; Swank v. Fretts, 209 Pa. 625 ; Yerkes v. Richards, 153 Pa. 646 ; Verstine v. Yeaney, 210 Pa. 109.

An option is an unaccepted offer to sell and convey within the time fixed and upon the conditions set forth in the written agreement : McMillan v. Philadelphia Company, 159 Pa. 142. In the evolution of modern business methods this has grown to be the prevailing custom in making sales of coal lands, and other mineral estates, in many sections of our state. It is important, therefore, that the rights and liabilities of contracting parties in such agreements should be definitely determined. It must be conceded that there is some difficulty in harmonizing the cases in which questions of this character have arisen. The inconsistencies, however, if such they may be called, are more apparent than real. The difficulty is not so much in the principle involved as in the application of it to the facts of a particular case. It has happened in a few instances, that the rules of law applicable only to absolute contracts to convey have been referred to in our decisions as bearing upon the rights and liabilities of parties in an option to purchase. In no instance, however, called to our attention has such a reference been material or controlling in the decision of the issue involved. There can be no such thing as mutuality of covenants on the part of the vendor to convey and deliver a deed clear of all incumbrances and of the vendee to pay, or give security for the payment of the consideration agreed upon, during the option period and before the exercise of the election to purchase. Mutual and dependant covenants must of necessity, in their very nature, relate to an absolute contract between the parties in the first instance, or to an optional agreement which has become absolute by an election to take

within the period fixed. An option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee. The court below was, therefore, in error in holding that the covenants in the agreement under consideration were mutual and dependent from the date of the execution of the agreement. Adams v. Williams, 2 W. & S. 227; Remington v. Irwin, 14 Pa. 143; Keeler v. Schmertz, 46 Pa. 135; Irwin v. Bleakley, 67 Pa. 24; Sylvester v. Born, 132 Pa. 467, relied on to support this doctrine, are cases growing out of absolute contracts for the sale of real estate and have no application in determining the rights of parties to an optional agreement during the option period and before the option has been exercised. The optionor in the present case bound himself, his heirs and assigns, to sell and convey upon the terms and conditions set forth in the agreement, and within the time fixed for the first payment. The optionee could take or refuse to take during that period. If he failed or neglected to exercise his option within the time limited in the manner specified in the agreement, it was at an end. The agreement did not become an absolute contract to purchase until the optionee elected to take. At the very moment he exercised his option, if the election was made in the manner specified in the agreement, it became a binding contract between the parties, and from that time both parties would be bound by the covenants therein contained.

It must now be determined whether the optionees or their assignee exercised the option in the manner specified in the agreement, which contains the following provision : " It is expressly understood and agreed that if the first payment aforesaid is not made on the second day of October, A. D. 1899, or within ten days thereafter, this agreement shall be considered as rescinded, and neither party shall be bound thereby." Having held that the agreement is an option to purchase, it must necessarily follow that the election to take must be exercised in the manner therein required. The only method specified is that contained in the clause above recited, and this provided for the payment of one-fourth of the purchase money on or before a certain date or within ten days thereafter. If the

case depended upon this question alone, we would be compelled to hold that failure to make the first payment within the time worked a forfeiture of all rights under the agreement. It appears from the testimony that the appellee here caused a written notice of his election to purchase the coal to be served on appellant on October 11, 1899. This notice was served within the time specified in the agreement, and it is contended that it then became the duty of appellant to tender a deed with abstract of title before he could insist upon a forfeiture of the contract. In other words, even if the covenants were not mutual from the inception of the contract, they became mutual immediately upon the election to take. This would undoubtedly be true if the option had been exercised in the manner required by the agreement. Nor do we consider Corson v. Mulvany, 49 Pa. 88, Smith & Fleek's Appeal, 69 Pa. 474, and Yerkes v. Richards, 153 Pa. 646, authority for a different doctrine. These cases, it is true, related to optional agreements, but they dealt with the mutuality of parties and not of covenants. Nothing therein decided supports the contention that covenants in optional agreements are mutual and dependent from the date of their execution.

It is argued that it makes no difference whether this contract be considered an absolute agreement to sell, or only an option to purchase, because, if the latter, it was exercised within the time fixed, and therefore the covenants became mutual. This argument would be sound if the option had been exercised in the manner provided in the agreement. It was not so exercised. Notice in writing served upon the optionor of an election to purchase was not sufficient in this case, because a different method was provided by the parties. The payment of one-fourth of the purchase money on or before October 12, 1899, was the condition upon which the option could be exercised. Time was of the essence of this contract, because made so by the parties, and failure to pay within the time specified worked a forfeiture unless waived by the optionor in express terms or by necessary implication.

This brings us to the consideration of what we consider the pinch of the case. Several months after appellee had served appellant with notice of his election to take, he caused a tender of $1,500 in gold to be made appellant, and demanded a

deed for the coal and mining rights. On the date when this tender was made, to wit: July 20, 1900, the original optional agreement, which had not been acknowledged, was presented to appellant, who in due form of law acknowledged the same to be his act and deed, and desired it to be recorded as such. This act by appellant is inconsistent with the position now taken that a forfeiture had been asserted or claimed upon failure to make the first payment within the time specified. By this act he acknowledged the original agreement as still in force, and by implication, at least, waived his right to declare a forfeiture. The agreement was subsequently recorded, and thereby public record was made giving notice that appellant acknowledged it to be in force and binding upon him long after the date when he now asks the courts to decree a rescission upon the ground of failure to make payment as required. It would be unjust and inequitable to do so. He is estopped by his own acts from asking for a rescission of the contract for the reasons just given.

While there are many other questions raised by the specifications of error, we do not deem it necessary to discuss them, because the decree entered by the court below must be sustained on the ground stated.

Decree affirmed at cost of appellant.