[No. 14287. Department Two. February 5, 1918.]

E. W. MALONEY, *Respondent,* v. MONTANA RANCHES
COMPANY, *Appellant.*[1]

FRAUDS, STATUTE OF — CONTRACTS RELATING TO LAND—BROKER'S COMMISSIONS — DESCRIPTION — OWNERSHIP — OPTION. One having an "option" upon land under an exclusive sales agency is not thereby constituted the "owner," within the meaning of Rem. Code, § 5289, subd. 5, requiring contracts to pay a broker's commissions to be in writing containing a description of the land; hence his contract with subagents for compensation for their services is not governed by the statute of frauds.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered March 14, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract, after a trial on the merits. Affirmed.

*A. E. Gallagher,* for appellant.
*McCarthy & Edge,* for respondent.

[1]Reported in 170 Pac. 567.

Holcomb, J.—Respondent sued to recover $2,900 alleged to be due from appellant on a contract of commissions for a sale of real estate. The complaint alleged that, subsequent to July 1, 1915, appellant was engaged in procuring exclusive sales agent agreements from owners of tracts of land situate in Montana, and in the selling and acting as sales agent for lands for which sales agent agreements were or might be procured; that on July 6, 1915, appellant engaged respondent to cooperate with appellant in the above work and an agreement was entered into between them, which agreement was partially oral and partially in writing, and by the terms of which appellant employed respondent to render services in procuring customers for appellant and in referring customers to appellant to whom sales of lands for which appellant had taken or might in future take exclusive agency sales contracts might be made, the written portion of which agreement is annexed to the complaint and marked Exhibit A; that Exhibit A contained a statement of the compensation and schedule of payments to be made by appellant to respondent for services; that, on July 7, 1915, the terms of that agreement were changed by agreement, partially in parol and partially in writing, the written portion of which is attached to the complaint marked Exhibit B; that respondent immediately entered upon the employment so agreed upon and continued at all times during the life of the agreement to carry out the terms thereof; that, subsequent to the making of the agreement, appellant, in the course of its business, obtained the exclusive sales agency of a certain tract of land consisting approximately of 740 acres of land, about one-half mile south of East Helena, Montana, commonly known as the Good & Walruth ranch; that, thereafter and during

the month of November, 1915, that ranch was sold by appellant to one Joseph Vollmer, a customer from the state of Nebraska, procured through the efforts of respondent and his sub-agent, for $70,000, $40,000 of which was paid by exchange of other property, and that, on account thereof, there became due and owing to respondent $2,900, no part of which had been paid. Appellant's answer admitted the sale by it of the Good & Walruth ranch to Joseph Vollmer for the sum alleged in the complaint, and denied substantially the other allegations of the complaint.

At the trial, when respondent rested his case, appellant moved the court to take the case from the jury and enter judgment in favor of appellant, which motion was denied. Again, after the testimony was all in, appellant renewed its same motion, which was denied. Motions for judgment notwithstanding the verdict and also for a new trial were likewise unsuccessfully made. The jury rendered a verdict in favor of respondent for $1,623.

The motion of appellant for judgment, made at the close of respondent's case and again at the close of the testimony on both sides, whereby appellant challenged the legal sufficiency of the evidence to sustain a verdict in favor of respondent, was based upon the fact that the respondent alleged in his complaint an employment by the appellant to procure customers for the appellant for the sale of lands for which appellant had an agency contract to sell, in which form of action the contract would not have to be in writing, and at the trial of the cause respondent wholly failed to sustain this allegation of his complaint; that the evidence conclusively showed that appellant contracted as owner of the land in question with respondent, and since the testimony showed that appellant as owner of the land had employed respondent as broker to sell appellant's

land, the contract was void as it did not comply with subd. 5, Rem. Code, § 5289, requiring a description of such lands to be incorporated in a memorandum evidencing the contract between the parties for the sale of such lands. The sufficiency of the evidence to entitle respondent to recover under this subdivision of the statute is the only question presented on this appeal.

The contracts referred to, which were in writing as set up in the plaintiff's complaint and admitted at the trial by appellant to have been entered into by the parties, are as follows:

"Exhibit 'A'.
"Agents.

"This agreement, made and entered into this 6th day of July, 1915, by and between Herbert A. Hover, party of the first part, and E. W. Maloney, party of the second part, Witnesseth:

"Whereas, first party is the owner of, or exclusive sales-agent for various tracts of land situated in the state of Montana and the second party is desirous of procuring purchasers for said lands, the parties hereto have agreed to the following:

"Party of the second part is hereby made agent of first party for the purpose of securing purchasers, and the district allotted to second party under the terms of this contract is Eastern Washington and Northern Idaho, except when specifically reserved.

"It is expressly understood that no exclusive territory is allotted to any agent of first party, and no agent will be entitled to a commission for the sole reason that sale is made to a person residing in his territory.

"Party of the second part shall be paid for all services rendered in accordance with the proportioning and commission schedules printed upon the back of this contract, which schedules are hereby made a part hereof. Commission as provided in said schedules shall be in full of all compensation and expenses, unless changed by express written agreement. Such commission shall not be paid second party unless the same

is earned during the life of, or within thirty days after the expiration of this contract; it being provided, however, that commission as specified in said schedules shall be paid upon all deals closed during the term of this contract or within 30 days after the expiration of the same, although the commission be not collected until thereafter.

"Party of the second part shall distribute such advertising matter as first party may furnish him, it being understood and agreed that all such advertising matter shall be properly cared for by said second party, and that such portion thereof as is not distributed shall be and remain the property of first party, to be returned to him upon demand.

"In all cases in which a prospective customer is sent to the city of Helena, Montana, party of the second part shall, in advance, but not more than 15 days in advance of the arrival of such prospective customer, advise the Montana Ranches Co., at Helena, that such prospect is coming to Helena, giving time of his arrival as near as possible, his name, financial circumstances, probable amount and class of land desired, and such other data as second party may deem advisable.

"If the total individual real estate sales of second party during the term of this contract (not including property taken in trade) amounts to $50,000 or more, a bonus of $500 will be paid second party when $30,000 in cash has been paid thereon.

"Where there is any conflict between two or more agents of first party with reference to a commission, and the claimants are unable to agree, party of the first part (and the Montana Ranches Co.) shall be released from any and all claims and demands on account thereof, by any or either of such conflicting claimants, upon payment of such commission either into court or to any arbitrator chosen by the parties; it being distinctly understood and agreed that under no circumstances shall first party be obligated to pay a total commission greater than the entire commission provided by the schedules printed on the back hereof.

"It is further provided that party of the first part

shall not be responsible for failures of title, and that no commission shall be payable if titles fail. In no event shall any commission become payable until first party has received and accepted, and both parties to any such sales have duly executed contract or conveyances. If commissions have been paid and for any reason a sale is canceled, and all or part of payment made thereon returned, second party shall refund to first party any excess of such commissions, above 25 per cent of actual sum retained by first party on such sale.

"It is further provided that all quotations made by first party are subject to previous sale, change of price, or withdrawal without notice.

"It is further provided that second party, under this contract, has no authority to bind first party to any payments, or to make contracts to buy or sell property, except strictly subject to first party's approval, nor to collect nor pay money as first party's agent for any purpose whatsoever, or incur any other liability against first party or the Montana Ranches Co., unless expressly authorized in writing.

"If a sale amounts to over $10,000 (exclusive of property taken in trade) no commission shall be paid under Commission Schedule No. 2, but commission shall be computed as provided by Commission Schedule No. 3. Commission Schedules Nos. 1, 2 and 3, relate to money purchase price only, and not to property taken in trade, nor to sales of personal property which is covered by Commission Schedule No. 5.

"This contract shall be in effect from July 6, 1915, to January 1st, 1916, but may be canceled by either party for any violation of its terms by three days' notice and for any other reason by thirty days' notice, but the cancellation shall not affect the payment of any commissions which have been previously earned hereunder by second party.

"In witness whereof, the parties hereto have executed this instrument in duplicate the day and year first above written.

"Herbert A. Hover, party of the first part.
"E. W. Maloney, party of the second part.

[Here follow Proportioning and Commission Schedules.]

"Exhibit 'B'.

"Spokane, Washington, July 7, 1915.
"Mr. E. W. Maloney,
     "Spokane, Wash.

"Dear Sir: It is agreed commissions on any Nebraska business you may do on your trip now contemplated will be three-fourths of those specified in your contract now in force on everything previously solicited by any of our agents except prospects furnished by Harry D. Hover, and on prospects furnished by him commission shall be one-half present contract. Provided that no agents' commissions are payable by us to local agents on said business. Where said commissions are payable you will receive full contract commission less said local agent's commission on all except Harry D. Hover's prospects and three-fourths of contract rate of his prospects less amounts payable to said local agents, where local agent's commission exceeds 5% you will receive on Harry D. Hover's prospects at least 2½%. On business you do which is entirely new and never before solicited by Harry D. Hover, you will get straight contract rate and pay all local if any there are to pay.

"Montana Ranches Co.,
     "By H. A. Hover, President.

"Above arrangement is accepted by me and contract referred to is one dated July 6th, 1915, and signed by me and Herbert A. Hover.

"E. W. Maloney (signed.)"

Respondent, upon the question raised, presented these facts: Appellant was engaged chiefly in the sale of ranches in the state of Montana, and had its principal place of business in Spokane. Respondent also was engaged in the real estate business. The business of appellant was extensive, running into large sums of money covering many separate transactions and sales and in a number of western states. Its

method of carrying on its business as described by respondent was as follows:

"It was engaged in getting options and leasing lands in Montana and selling them at a profit on what is generally known as a commission. During the operation of the business of the Montana Ranches Company it was necessary for them from time to time to secure options and contracts from different owners of lands throughout the Helena valley and other districts in Montana, and when these were secured as a rule they sent us [the employees] descriptions of these different tracts of land, and that at the time I made this contract with Mr. Hover, president of the appellant, . . . he had descriptions sent to us as he would get these listings or options on different pieces of land, and the prices of them, etc., and we were also notified when sales were made on different pieces of land. Usually they would send out postal cards striking them off our list. In that way we were kept posted from time to time as to what new lands we had and what had already been disposed of."

Appellant contends that this showing of the respondent falls far short of showing any brokerage business on the part of appellant in the selling of land, and that the contract of the parties recited that appellant was either the owner of or the exclusive sales agent for various tracts of land, etc., which it was desirous of procuring purchasers for; and that, in showing that the particular land in question was one under an agency contract of respondent with appellant, it was to be assumed that it was one of which appellant was owner, and therefore was covered by subd. 5, Rem. Code, § 5289, requiring such agreement to be in writing and to describe the land in the memorandum agreement. Respondent, on the other hand, contends, in effect, that the contract between the parties contemplated that he should act as subagent of appellant where appellant was exclusive sales agent for the

tracts of land procured by it for sale, and that its business was that of procuring options for such sales as exclusive sales-agency contracts, and that when descriptions of such lands were sent to its employees and the prices of them, it was to be assumed that the agent, such as respondent was, should proceed as an agent of the broker, and that he did so proceed, and that such was the general method of business of appellant as a sales agent of lands.

Appellant did not rest upon the denial of the motion for judgment made at the conclusion of respondent's case, but proceeded to introduce evidence, and by the evidence of appellant it was shown that, about the same time that the contracts were entered into with respondent, H. A. Hover, president of appellant, obtained an option for the Good & Walruth ranch for the sum of one dollar, which option he assigned to appellant. He did not know whether the one dollar had ever been paid or not, as it was only a nominal sum and only paid by appellant when demanded by the optioner; and the option was not exercised until the sale to Vollmer had been consummated in November, 1915. Even then, conveyance was not made by the owner to appellant. Upon this, appellant claims that it was exclusively established that it was the owner of the Good & Walruth ranch and that, therefore, its motion at the conclusion of all the evidence should have been granted in any event.

The contention that appellant was the owner of the Good & Walruth ranch by reason of having an option for the purchase thereof cannot be sustained. An option means a privilege. 6 Words & Phrases, p. 5,000. It is only a formal offer by the optioner to convey title to the optionee upon acceptance by him of stated terms, usually within a specified time. It does not be-

come a contract *inter partes* in the sense of an absolute contract to convey on the one side and to purchase on the other, until exercised by the optionee. *Barnes v. Rea,* 219 Pa. 279, 68 Atl. 836.

"Whatever may be the subject-matter in contemplation, the contract called an option transfers from the one party to the other no title thereto. It thus differs from an executed contract for the sale of property, by which title to the thing sold is transferred." 21 Am. & Eng. Ency. Law (2d ed.), p. 925.

It is manifest that, whatever may have been the condition of the case at the close of respondent's evidence, respondent's case was aided by the testimony of appellant to the effect that it had only an unaccepted option at the time of the transaction between it and the respondent, and of the sale of the Good & Walruth ranch, which did not constitute it the owner, but tends to support respondent's theory of the case that the option was merely a sales contract procured for the purpose of obtaining the exclusive right to sell the property, and if not sold by appellant, it never intended to exercise the option by complying with its terms between it and the owner. In such case, appellant not being the real owner of the property, but only an exclusive sales agent, it was not necessary for its contract with its sales agent to comply with Rem. Code, § 5289, subd. 5.

Without discussing all the points discussed by the parties as to whether or not the relation of the parties was that of partnership or joint adventurers or cobrokers, it is sufficient to say that we do not think the contract one governed by the statute of frauds and void because not containing a written description of lands to be sold. Respondent, having satisfied the jury by competent evidence that he and his subagent were the procuring cause of the sale of the lands, was en-

titled to recover according to the terms of the agreement between the parties. No other substantial question is discussed in the case.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and MOUNT, JJ., concur.