## Walsh v. Powell et al.

*Karl W. Johnson* and *Thomson F. Edwards*, for plaintiff.

*Holl, Taylor and Holl*, for defendants.

ERVIN, P. J., January 3, 1951.—Plaintiff filed a bill in equity seeking to enjoin defendants from removing topsoil from a tract of ground which he had an option to purchase. Plaintiff also sought damages for the waste done. Defendants filed an answer admitting all of the material averments in plaintiff's bill but denying that the option created any interest in the land or topsoil in favor of plaintiff. Defendants also denied that the removal of the topsoil would occasion any damages but that if it did, plaintiff had an adequate remedy at law. Plaintiff filed preliminary objections to defendants' answer.

This presents the interesting question of whether an optionee who has never exercised his option to buy the

land has the right to restrain the optionor from committing waste. An examination of the option agreement reveals that the owner, for a consideration of $5,000 paid by the optionee, granted to the optionee, his heirs and assigns, for the term or period of five years from the date of the agreement, the exclusive right, privilege and option to purchase a 47½-acre tract of ground in this county for the sum of $1,500 per acre. By the agreement the owner agrees to join with the optionee in any application made by the optionee for a change of zoning of the tract. The optionee is also given the right to enter upon the land, to erect and display signs to advertise development, erect a temporary sales office to promote development, to outline roadways and lot sizes by surface grading, excavations and by other marks and to do and perform such other things as are necessary to carry out the terms and intention of the agreement and the sale and development of the land. The optionee is given the right, upon delivery to the owner of a labor and materialmen's bond of a reputable surety company in an amount sufficient to cover the cost thereof, to construct and install roads, streets, curbing, sidewalks, sewers and other utilities on the land. The original optionee assigned his interest in the contract to present plaintiff for the sum of $10,000. The bill avers an intention upon the part of plaintiff to exercise the option prior to the end of the five-year period.

At the outset it will be necessary to consider the nature of the optionee's interest in the land or under the agreement.

In Peoples Street Railway Co. v. Spencer, 156 Pa. 85, at page 89, Mr. Justice Mitchell said:

"It is unimportant what name we apply to the relation of the parties during the year. Whether technically vendor and vendee, mortgagor and mortgagee, or lessor and lessee, is immaterial. The nature of the

relation is incontestable; appellant was the holder of the legal title, subject to an equity in the company. It is strongly argued for appellant that his interest at the time of the fire was an absolute fee simple title. But this is an error, it was not absolute. It was the legal title in fee, but subject to the equitable interest of the company, an interest in the land, capable of being specifically enforced, and good not only against the appellant but all others, creditors, purchasers or strangers, to whom the recorded deeds and the company's possession gave notice. The only substantial question in the case is the date at which the company's equity became complete. The fire took place during the running of the term, the option to redeem was exercised after the fire had occurred. Did the company's interest begin to run only from the exercise of its option, or did it upon that event relate back for all purposes to the beginning of the transaction? We are of opinion that both principle and authority sustain the latter view."

See, also, Kerr v. Day, 14 Pa. 112; Schnee et al. v. Elston et ux., 299 Pa. 100.

In Barnes v. Rea, 219 Pa. 279, 285, Mr. Justice Elkin said:

"An option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee. The court below was, therefore, in error in holding that the covenants in the agreement under consideration were mutual and dependent from the date of the execution of the agreement. Adams v. Williams, 2 W. & S. 227; Remington v. Irwin, 14 Pa. 143; Keeler v. Schmertz, 46 Pa. 135; Irwin v. Bleakley, 67 Pa. 24; Sylvester v. Born, 132 Pa. 467, relied on to support this doctrine, are cases growing out of absolute contracts for the

sale of real estate and have no application in determining the rights of parties to an optional agreement during the option period and before the option has been exercised. The optionor in the present case bound himself, his heirs and assigns, to sell and convey upon the terms and conditions set forth in the agreement, and within the time fixed for the first payment. The optionee could take or refuse to take during that period. If he failed or neglected to exercise his option within the time limited in the manner specified in the agreement, it was at an end. The agreement did not become an absolute contract to purchase until the optionee elected to take. At the very moment he exercised his option, if the election was made in the manner specified in the agreement, it became a binding contract between the parties, and from that time both parties would be bound by the covenants therein contained."

In Phoenixville, Valley Forge & Strafford Electric Railway Co.'s Appeal, 70 Pa. Superior Ct. 391, 395, Judge Porter said:

"The learned judge of the court below was of opinion that the appellant had no interest in the land at the time it was taken by the Commonwealth, and that even if the facts had been fully set forth in the report of the viewers the appellant was not entitled to any part of the damages. We are unable to concur in the conclusion reached by the court below. One who under a properly executed agreement has an option to purchase land does not hold the lands, nor even an absolute agreement that he shall have the lands conveyed to him, but he does get something of value, that is, the right to call for a conveyance of the lands if he elects to purchase in the manner specified. The owner parts with his right to sell the lands except to the second party, for a limited period. It is a unilateral agreement, containing the terms and conditions upon which the optionor agrees to sell and convey his land, not yet

ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other. Such a contract is binding on the land owner from the date of its execution, and becomes an absolute contract of sale binding on both parties, if the election to purchase is made in accordance with its provisions: Barnes v. Rea, 219 Pa. 279; McHenry v. Mitchell, 219 Pa. 297; Schaeffer v. Herman, 237 Pa. 86; Barton v. Thaw, 246 Pa. 348. . . . The right of the optionee is a substantial interest in land which can be conveyed to a vendee, and when the option is exercised according to the terms of the contract, the purchaser's equitable title, as between the parties, reverts back to the date of the original agreement: Kerr v. Day, 14 Pa. 112; Peoples Street Ry. Co. v. Spencer, 156 Pa. 85; Strasser v. Steck, 216 Pa. 577."

In Stevenson v. Titus et al., 332 Pa. 100, in a footnote on page 105 of an opinion written by Mr. Justice Horace Stern, is the following:

"An option, no less than a binding agreement to purchase, creates a 'substantial interest' in the land: Kerr v. Day, 14 Pa. 112; Peoples Street Railway Co. v. Spencer, 156 Pa. 85, 90, 91; Strasser v. Steck, 216 Pa. 577, 580; Barton v. Thaw, 246 Pa. 348, 357; Phoenixville Valley Forge & Strafford Electric Railway Co.'s Appeal, 70 Pa. Superior Ct. 391, 396."

See, also, Schaeffer v. Herman, 237 Pa. 86; Phillips v. Tetzner, 357 Pa. 43.

McClintock, in his work on Equity, page 299, says:

"Even though the vendor has given only an option for the purchase of the land, he owes the duty to maintain the property in the condition it was in when he gave the option, and is liable for committing waste by cutting timber if the option is subsequently exercised. This holding seems to indicate that the liability of the vendor is not based upon conversion, since no conversion results from the giving of an option, but rather

that it is an obligation implied from the contract or imposed by law because of the relationship created by the contract. That conclusion is strengthened by consideration of the cases where the same result has been reached without reliance on the doctrine of conversion."

In a very able note in 48 Harvard Law Review 821, at page 825, it is said:

"In McCarroll v. Newsham a purchaser who had taken title recovered damages for waste committed while his sole interest in the land was under an option. But a contrary result was reached in Varn Turpentine & Cattle Co. v. Allen on the ground that an optionee had no interest in the land, even though the option were subsequently exercised. A review of the cases involving other rights of the option-holder, however, not only indicates that this objection is without the force of unanimous support, but, in fact, discloses a tendency toward the view taken in the McCarroll case. Thus, the optionee has recovered condemnation awards in a majority of the few jurisdictions which have passed upon the point. And, although not subject to execution, the optionee's interest has been considered sufficient to be reached by a creditor's bill. Further, where remoteness of vesting instead of restraint on alienation is the test, options have almost invariably been held subject to the Rule against Perpetuities, even in the jurisdiction in which the Allen case was decided. They are likewise quite generally subject to the Statute of Frauds and the recording acts. They can be mortgaged, and are almost unanimously enforceable against third persons who acquire the land with notice. Whatever name be used, the optionee does seem to have an interest which, in view of its treatment in related situations, should be enough to enable an equity court to grant relief for the optionor's waste.

"Even though the optionee's interest be held no more extensive than a contract right to acquire an interest

in the land at a future date, his recovery in equity for waste would not necessarily be defeated. In substance, the contract right has a value to the optionee equal to that of any property right acquired by the purchaser. The optionee's control of the title through his ability to assign and to get specific performance against those taking with notice makes him like the purchaser for all purposes but that of responsibility for accidental loss, and equity should accord him similar remedies for the former landowner's waste."

The pleadings show that this property was purchased for residential purposes. In fact, that is the only way it could be used under the zoning ordinance in effect at this time. Topsoil is not only desirable but almost a necessity in residential developments. Prospective purchasers are interested in having grass plots and flower gardens about their residences. Topsoil is a very material part of the land desired for residential development. Since equity regards every tract of land as unique, it cannot consider the recovery of damages to be an adequate remedy for an act which deprives the owner of a substantial part of his land or seriously impairs its usefulness. As was stated in McClintock on Equity, page 366:

"The removal or destruction of a material part of the substance of the land, such as the soil or minerals contained in it, is generally considered to be an irreparable injury."

While there is some split authority on the subject in this country, we believe that the better view is the one stated above. Furthermore, defendants filed an answer on the merits and if they intended to raise the question of adequate remedy at law, they should have filed preliminary objections and had the matter disposed of in limine. See Berlizheimer v. Asset Building and Loan Association, 17 D. & C. 167.