Brock et al., Exrs., Appellants, *v.* Real Estate-Land Title and Trust Company.

Argued January 8, 1935.   Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

50

*Robert T. McCracken,* with him *John F. Headly,* of *Montgomery & McCracken,* for appellants.

*Benjamin H. Ludlow,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 25, 1935:

The question here is whether or not there was evidence to go to the jury of a clerk's authority to endorse a check for deposit, in behalf of his employer, and whether or not payment to the depository named in the endorsement was payment to the coexecutors of whom the clerk's employer was one.

On December 30, 1909, plaintiffs and John W. Brock, now deceased, were granted letters testamentary, as executors of the last will and testament of Arthur Brock, deceased. Included in the assets was a parcel of real estate in the City of Philadelphia. The executors sold this property to one McNeal and wife, taking a purchase-money mortgage, which by subsequent payments was reduced to $25,000. On September 17, 1930, McNeal sold the property. Settlement took place at the office of the defendant and the latter retained the sum of $25,963.50 for satisfaction of the mortgage, this being the full amount of the principal and interest due. On the same day defendant drew a check for this sum to the order of "Estate of Arthur Brock, dec'd," and sent it to the office of John W.

Brock, the active coexecutor of that estate. The latter was then ill and unable to attend to business, and the check was delivered to Charles F. Hess, who was employed both by Reilly, Brock & Company, investment bankers, and also by John W. Brock, to whom he rendered clerical assistance with the accounts of the Arthur Brock Estate. John W. Brock had his office on the second floor of a building the first floor of which was occupied by Reilly, Brock & Co. John W. Brock's son was a partner in that company. Of the other three executors of the Arthur Brock Estate, one was in Nova Scotia and two were in California. Hess sought advice from the defendant as to what to do with the check and was told that anyone could endorse it for deposit. For several years the estate had maintained two accounts: one with the Fidelity-Philadelphia Trust Co., and the other with Reilly, Brock & Co., investment bankers. The first was an ordinary bank account and the second was a customer's account. Hess believed that the estate deposited income moneys in the checking account and principal in the customer's account, and typed on the back of the check the following endorsement: "For Deposit Pay to the order of Reilly, Brock & Company Estate of Arthur Brock, D'c'd John W. Brock, Executor," and delivered the check to Reilly, Brock & Co. It went through the clearing house, was paid, and the estate was credited with the proceeds on the books of Reilly, Brock & Co. Hess then arranged with this company to transfer $963.50 to the Fidelity-Philadelphia Trust Co., so as to segregate interest from principal. This was done, leaving with Reilly, Brock & Co., to the credit of the Arthur Brock Estate, $25,000.

On October 24, 1930, while this sum was still in the possession of Reilly, Brock & Co., that firm made an assignment for the benefit of creditors. Plaintiffs then brought suit against defendant, claiming that the proceeds of the mortgage had never been paid to the estate. The defense was that the acts above cited constituted pay-

ment to the estate. The case came up for trial and the jury was instructed that if it found that Hess had authority from John W. Brock to deposit the check as he did, the verdict should be for defendant, but if it found that he had no such authority, its verdict should be for plaintiffs. The jury found for defendant and thereupon plaintiffs entered rules for judgment n. o. v. and for a new trial. These were later discharged and this appeal followed.

The question submitted to the jury was whether or not Hess had implied authority to accept the check and deposit it as he did. In other words, the question is whether under the maximum of plaintiffs' proof the conclusion that Hess had authority to do what he did with the check was legally permissible. Defendant's proof was as follows: John W. Brock was the most active of the executors. He customarily received all moneys of the estate and deposited them. He kept the estate accounts and rendered statements to the others. Charles F. Hess was employed by John W. Brock from 1905 until 1923. He was then employed for two years by a hospital of which Mr. Brock was treasurer. In 1925 Hess left the employment of the hospital and assisted Mr. Brock in moving his office to the second floor of 1607 Walnut Street. From that time until the assignment by this firm, Hess was employed by Reilly, Brock & Co., but he continued to help John W. Brock in a secretarial and bookkeeping capacity. He made deposits for the estate of which John W. Brock was executor in the Fidelity-Philadelphia Trust Company and endorsed checks of the estate "For Deposit" in the presence of John W. Brock. He likewise did so when Mr. Brock was absent from his office. He prepared and sent out notices of mortgage interest and it was he who prepared and sent to McNeal and his wife (prospective purchasers of the mortgaged property) and to defendant a statement of the amount necessary to satisfy the mortgage in question. This estate, with the knowledge of all the executors, established an

account with Reilly, Brock & Co., in 1915 and bought and sold many securities through this company. Frequently the estate balances amounted to several thousand dollars over a period of many months. When Hess deposited the check in question there was already in the same account (i. e., the Arthur Brock Estate "customer's account") $5,700, and this amount had been·there since June 25, 1930. This fund was intact when the company failed on October 24, 1930.

It is unquestioned that payment to John W. Brock, as executor of the estate of Arthur Brock, constituted payment to that estate and the court below aptly said: "If Hess had received the check and had been expressly directed by John W. Brock to endorse it and deposit it with Reilly, Brock & Co., the estate would have been paid. Why should any different result follow because Hess acted pursuant to authority given him previously by John W. Brock, rather than pursuant to authority given him at the moment? If Hess had that authority, the estate was paid and the verdict for defendant was proper."

It is a long established principle that "whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed, frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject-matter of the contract": 21 R. C. L., section 6, page 820. In 2 C. J., section 32, page 436, there is laid down this principle: "It [the fact of agency] must be determined from the facts and circumstances of the particular case, and if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist." In Colonial Trust Co. v. Davis, 274 Pa. 363, 118 A. 312, this court, in an opinion by the present Chief Justice, said: "While the mere fact of Larned's [i. e., the agent's] employment to make mortgage loans,

prepare necessary papers and attend to the settlement would not vest in him authority from the mortgagee to collect the principal of the mortgage, we find ample in the foregoing recital of the facts touching the course of dealing between him and plaintiff to warrant the conclusion that his authority extended beyond the mere making of loans and included the power to receive both principal and interest on behalf of plaintiff." The facts of the present case are much stronger in favor of the defendant than they are in the case just cited because in *that* case the defendant who received the payment in behalf of the alleged principal defaulted, while here the person whose agency was a fact in issue endorsed the check in good faith to the credit of his principal and deposited the same in the identical "banking house" where the principal had made or left other deposits in behalf of the estate. In Dodge v. Williams, 47 Pa. Superior Ct. 302, 306, that court said in an opinion by Judge ORLADY: "Evidence of the delegation of authority may be shown by . . . parol testimony showing a regular course of dealing with the knowledge of the principal, or that an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving the enlargement of his powers, with the knowledge and acquiescence of his principal." In Singer Mfg. Co. v. Christian, 211 Pa. 534, 60 A. 1087, this court held: "Where the authority of an agent is to be implied from the conduct of the parties, . . . the fact and scope of the agency are for the jury." Counsel for the appellant cited the fact that in Brock's Assigned Est. (No. 3), 312 Pa. 92, 166 A. 785, this court held that Reilly, Brock & Co., were not licensed private bankers. It is true that we did hold in that case that the preference granted by the Act of April 5, 1927, P. L. 106, amending section 1, of the Private Banking Act of 1911, P. L. 1060, to depositors in insolvent duly licensed state banks over general creditors, *does not extend to depositors in banks operating without the license required by the Act of 1911.* The question decided there has no rele-

vancy to the question here. We recognized there that this company was "engaged in the investment banking and brokerage business" and that "they also carried on a deposit banking business." We did not there deny that this company was operating as a de facto bank. We simply held that since the bank operated without the license required, the statutory preference *granted to depositors in duly licensed banks did not extend to its depositors.* This does not diminish the force of the fact that Hess deposited the check in question with Reilly, Brock & Co., where his employer, John W. Brock, had as coexecutor frequently deposited or left in behalf of the Arthur Brock Estate, sums of money, awaiting a favorable moment for their investment. Whether the account of the executors of the estate of Arthur Brock, deceased, with Reilly, Brock & Co., was designated as a deposit account, a checking account, or a customer's account is immaterial to the issue here. The material facts are that the executors of the Arthur Brock Estate had an "account" with Reilly, Brock & Co., and that Hess, a clerk for one of the coexecutors of this estate, and acting with the utmost good faith, deposited a check which came into his custody as clerk for John W. Brock, executor, in that account. There was ample evidence in this case to justify the jury's inference that because of Hess's long continued clerical relationship with John W. Brock, executor, and its nature, that it was within the scope of his authority to perform the comparatively trivial service of endorsing a check as he endorsed this one, to wit, "For deposit with Reilly, Brock & Company," and, to make the deposit in his employer's appropriate account.

We cannot accept the argument of appellant's counsel that "the fact that the estate had dealings with Reilly, Brock & Company in the past is of no importance." Section 34 of volume I of the Restatement of the Law of Agency, page 86, lays down this principle: "An authorization is interpreted in light of all accompanying circumstances, including among other matters: (a) the situa-

tion of the parties, their relations to one another, and the business in which they are engaged; (b) the general usages of business, the usages of trades or employments of the kind to which the authorization relates, and the business methods of the principal; (c) facts of which the agent has notice respecting the objects which the principal desires to accomplish." Section 26 of this same volume, page 72, lays down this principle: "Except for the execution of instruments under seal or for the performance of transactions required by statute to be authorized in a particular way, authority to do an act may be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Hess testified that he knew the executors had an account with Reilly, Brock & Co. He said he "did not know what it was" but that he did know that it was the proceeds of securities. He also testified that he had "endorsed for deposit before." We take it from the context that he was referring to endorsement for deposit in behalf of his employer, John W. Brock, executor of the Arthur Brock Estate. He testified that he "handled deposits for him" (i. e., John W. Brock). When Hess was asked this question: "Did he [Brock] ever challenge your right to endorse checks for deposit for him?," he answered, "No, sir." Hess's authority to do as he did with the check received by him during his employer's absence from the office was as clearly implied—from the relations long existing between him and his employer and the employer's business practices toward this clerk—as would have been authority on the part of Hess to receive a sum in cash for his employer as executor of the Arthur Brock Estate and place it in an apparently secure safe where he knew his employer kept other sums of money belonging to the same estate. If he had done this and the safe had been subsequently rifled of its contents, it could not be successfully contended that those who had paid sums of money to the executor of the Arthur Brock Estate by de-

livering these sums to his clerk, had not in contemplation of law paid the money to John W. Brock himself, as executor.

There is also evidence in this case of ratification of Hess's act by the executors. On September 25, 1930, seven days after the deposit of the McNeal mortgage check to the estate's customer account with Reilly, Brock & Co., and the transfer of approximately $1,600 income from the customer account to the estate's income account at Fidelity-Philadelphia Trust Co., Hess had the estate's pass book settled by the Fidelity-Philadelphia Trust Co., in accordance with the custom of having this done every three months. This pass book contained a credit to the estate of $1,600 which in turn was inclusive of $962.50 of accrued mortgage interest. A memorandum of the Arthur Brock Estate customer account from April 21, 1930, to and including October 1, 1930, showing receipts, disbursements and balances, was prepared by Reilly, Brock & Co., and taken by Hess to John W. Brock's residence on October 1, 1930. On this statement, opposite the item of $25,000, Mr. Brock had written in pencil "principal."

From the date of this deposit to the credit of Arthur Brock's Estate in the customer's account of Reilly, Brock & Co., this sum of $25,000 remained uninvested. There was also a further sum of $5,600 which had been in the customer's account of this estate since June 15, 1930, representing the sale of certain bonds which had belonged to the estate. There is also evidence that Sarah C. Brock, the widow of Arthur Brock, and one of the coexecutors, knew this sum of $25,000 received from the payment of the mortgage was in the Arthur Brock Estate account with Reilly, Brock & Co. On or about October 3, 1930, Sarah C. Brock wrote a letter to her nephew who was one of the partners of Reilly, Brock & Co., in which she referred to the sum of "$35,000 now idle in the A. B. Estate [evidently meaning the Arthur Brook Estate]." The trial judge in his charge said in referring to this: "There is a letter here from Mrs. Brook which refers to the

amount of $35,000 being in the possession of Reilly, Brock & Company awaiting investment. It is contended that from the tenor of that letter, it is apparent that Mrs. Brock knew that that amount was in the possession of Reilly, Brock & Co. It is for you to say whether she did or not. If she did, then that would amount to a confession of knowledge on her part that the funds were in the possession of Reilly, Brock & Company and she cannot be heard now to say that they should never have gone to Reilly, Brock & Company but to the Fidelity-Philadelphia Trust Company."

The judgment of the court below is affirmed.