## Falconer v. Mazess, Appellant.

Argued January 4, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Morton B. Wapner,* with him *Winokur & Kahn,* for appellant.

*Claude O. Lanciano,* for appellee.

OPINION BY MR. JUSTICE BELL, March 13, 1961:

Plaintiff brought an action of assumpsit against defendant for the return to him of $1,000 (with interest) which was held by defendant in escrow in accordance with a written agreement made between Falconer and Bair dated August 13, 1953. Defendant counterclaimed for $4,000 for commissions due him by plaintiff in accordance with a separate agreement made between Falconer and Mazess dated August 13, 1953. The lower Court entered judgment for the plaintiff in the sum of $1346.33, and for plaintiff on defendant's counterclaim. The Superior Court in a per curiam three to three decision affirmed the judgment.

Plaintiff had been engaged since 1924 in the trucking business. During the summer of 1953 he received a Cease and Desist Order issued by the Interstate Commerce Commission, which limited his rights. Plaintiff desired to acquire rights to take the place of those he had lost and in order to do so desired to purchase the stock of a corporation which owned the desired rights. William Howard Bair was the owner of all the stock of Marine Forwarding Co., Inc., which had a certificate of public convenience giving it the rights which plaintiff desired.

Plaintiff and his insurance agent met in Philadelphia on August 13, 1953 with defendant, a broker, and one Jacob Polin, an agent of Bair. Plaintiff prepared a contract in the form of a letter addressed to William Howard Bair, Trenton, New Jersey, in which he offered to purchase all of the common stock of the Marine Forwarding Co., Inc., settlement to be made under whichever of two options the seller should elect. The pertinent provisions of the contract are as follows:

"It is a condition of this offer that *it be accepted in writing, within five days from the date hereof,*[*] such acceptance to indicate the option under which sale is to be made; and it is a further condition of this offer that final settlement, transfer of stock, etc., shall be consummated not later than ~~June 28, 1953~~ August 28, 1953.

"A deposit binder of One Thousand Dollars accompanies this offer, which deposit shall be held by Mr. Samuel Mazess, of 201 N. Broad Street, Philadelphia, until the acceptance or rejection of this offer. Upon acceptance, it shall be paid over to you, and upon rejection it shall be returned to me. Very truly yours, (s) William Falconer."

The following letter of acceptance dated August 17, 1953, and duly stamped, was sent by Polin to plaintiff by United States mail on August 18, 1953:

"August 17, 1953. Mr. William Falconer, 602 Cascade Road, Forest Hills, Pittsburgh, Pa. Dear Mr. Falconer: This is in reference to your letter of August 13, 1953, directed to Mr. William Howard Bair of Trenton, N. J. relative to the purchase of the common stock of Marine Forwarding, Inc.

---

[*] Italics throughout, ours.

"I have been authorized by Mr. Bair to advise you that he has accepted Option 2 of the methods of purchase as outlined in your letter. He has indicated that the latter part of the week of August 24th would be satisfactory for the completion of this matter, but that he is waiting advice from his attorney as to the exact date by which all the necessary papers relating to the transaction can be prepared and be ready for execution by the parties. This date will be either August 26, 27, or 28. You will be advised by this week-end as to the specific date and the meeting place selected for final settlement. Very truly yours, Jacob Polin. cc: Mr. Bair cc: Mr. Mazess JP:jlm."

The letter arrived in Pittsburgh August 19, but was not delivered to plaintiff until August 20th, at which time plaintiff sent telegrams to Bair and to Polin and to Mazess, informing each that he was withdrawing his offer of purchase. The testimony differed as to his reason and excuse for withdrawing his offer. If placing the acceptance letter in a United States mail box was the date of acceptance, the offer was accepted within the required five-day period. If the acceptance had to be delivered to the offeror, Bair's acceptance came too late.

The trial Judge who sat as a jury committed at least three errors of law. First, and most important, he ruled that defendant's offer was not accepted until it was actually delivered to plaintiff. Plaintiff lived in Pittsburgh, Bair lived in Trenton, New Jersey, Polin lived in Havertown, Pa., and the defendant lived in Philadelphia. Plaintiff's letter-offer of August 13 did not expressly state how it was to be accepted, but under the circumstances of this case the use of the mails as a means of acceptance was impliedly authorized. As this Court said in *Meierdierck v. Miller*, 394 Pa. 484, 487, 147 A. 2d 406: ". . . Where the use of the mails as a means of acceptance is authorized or im-

plied from the surrounding circumstances,* the acceptance is complete by posting the letter in normal mail channels, without more. Restatement, Contracts §66; I Williston, Contracts §83 (3d ed. 1957). See also Cosgrove v. Woodward, 49 Pa. Superior Ct. 228 (1912). There is no requirement of receipt unless expressly provided for. . . ." See also Restatement, Contracts §§64 and 67; Page, Contracts, §52; Sum. Pa. Jur., Contracts, §198.

For this reason alone the judgment would have to be reversed.

The lower Court dismissed defendant's counterclaim because it said, first, that Polin's authority must be in writing, and secondly, because there was no evidence of Polin's authority to act as Bair's agent in accepting the offer. In each of these the Court erred. The general rule is that an agency relationship requires no special formalities. It need not be in writing and it arises whenever a person authorizes another expressly or by implication, i.e., by words and/or by conduct, to act as his agent. *Brock v. Real Estate Land Title & Trust Company*, 318 Pa. 49, 178 A. 146; *McGowan v. Lustig-Burgerhoff Co.*, 93 Pa. Superior Ct. 227; Restatement, Agency, §26.

How the lower Court could have held that there was no evidence of Polin's authority to act as Bair's agent is especially difficult to understand in view of the admission by plaintiff in the pleadings of Polin's agency, and plaintiff's admissions in direct and cross-examination that Polin was Bair's representative, and Polin's testimony to that effect.

---

* While the comment to the Uniform Commercial Code of 1953, §2-206 is inapplicable to the present case because the transaction occurred prior to its adoption, it provides:

"1. Any reasonable manner of acceptance is intended to be regarded as available unless the offeror has made quite clear that it will not be acceptable."

Defendant upon receipt of a copy of Polin's letter of acceptance dated August 17th sent Polin the down money ($1,000) in accordance with the clear provisions of Falconer's offer of August 13, and counterclaimed against plaintiff for the $4,000 commission which plaintiff had agreed to pay him as plaintiff's broker in accordance with their separate contract dated August 13, 1953. Under this contract it was recited that Falconer had made the same day an offer to purchase from William Howard Bair the stock of the Marine Forwarding Co., Inc. and wished to engage the services of Mazess to represent him in the consummation of the purchase from Bair and "In consideration of Mazess representing Falconer in this Bair transaction, Falconer will pay to Mazess the sum of $4,000. . .

"Addenda—It is a condition of this agreement that the said Four Thousand Dollars shall be paid to Mazess by Falconer at the time of final settlement and consummation of the Bair transaction, in legal tender of the United States of America. (s) William Falconer (s) Samuel Mazess." Falconer by rejecting Bair's acceptance of his offer made settlement impossible.

The lower Court, we repeat, dismissed defendant's counterclaim for $4,000.

The evidence produced by defendant to support his counterclaim left much to be desired. It will suffice to say that in view of the many trial errors and the confused state of the record, as well as the credibility of the witnesses, justice to both parties requires a new trial.

Order reversed and a new trial granted.