## Commonwealth v. DeSanzo

*Perry L. Reecher*, for Commonwealth.

*Wilbert C. McKim*, for defendant.

LYON, J., May 26, 1966.—On September 6, 1964, at or about 2:20 a.m., Tarquin Shaffer was operating a motor vehicle owned by Phillip DeSanzo, father of defendant. Defendant's drivers license was suspended at the time. Tarquin Shaffer was possessed of a junior operator's license, which authorized him to operate a motor vehicle only between the hours of 5:00 a.m. and 12:00 midnight, unless accompanied by a parent of the driver: The Vehicle Code of April 29, 1959, P. L. 58, sec. 604.1, as amended.

Tarquin Shaffer was arrested by Officer Taylor for operating a motor vehicle at a time unauthorized by his junior operator's license. At the same time, defendant was charged with permitting an unlicensed person to operate the vehicle. Other persons were present in the vehicle at the time of arrest, but it is not claimed that any was a parent either of Shaffer or defendant.

In due course, the Secretary of Revenue suspended defendant's driving privileges for one year, effective January 7, 1965, and this appeal followed. Testimony was taken before Judge John S. Powers, who is now retired. However, the parties have stipulated that this court may make findings of fact and decide the case to all intents and purposes in the same manner as a hearing judge is empowered by law. We shall proceed in accord with the stipulation.

On an appeal from the suspension of an operator's license by the Secretary of Revenue, the hearing is de novo, and the court must take the testimony of witnesses of the Commonwealth and witnesses of defendant and, from the testimony taken, determine anew

whether the operator's license should be suspended. At such hearing, neither the action of the secretary nor the testimony taken before his representative is properly part of the record in the case: Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953).

A suspension proceeding is civil, and the burden of proof is on the Commonwealth to sustain the charge by the fair preponderance of the evidence: Case of Wilander Auto License, 15 Bucks 320 (1965). Thus, the burden on the Commonwealth is to prove: (1) that the vehicle being operated by Tarquin Shaffer was legally under the control of defendant; and (2) that defendant knowingly permitted the alleged violation: Moyer Automobile License Case, 359 Pa. 536, 59 A. 2d 927 (1948); Commonwealth v. Dunn, 35 D. & C. 2d 50 (1964); The Vehicle Code of 1959, as amended, sec. 626.

The Commonwealth urges that an inference or presumption that the vehicle was under defendant's control arose from proof that defendant was the son of the vehicle owner. No citations of authority in support of this position were submitted, possibly because no such authority could be found. In Waters v. New Amsterdam Casualty Company, 393 Pa. 247, 144 A. 2d 354 (1958), it was held that where it is shown that a person other than the operator is the owner of an automobile, a presumption arises that the operator was driving the vehicle with permission of the owner; that if the owner fails to introduce credible evidence negating such permission, then the issue is decided against him as a matter of law. In accord: Exner v. Safeco Insurance Company of America, 402 Pa. 473, 167 A. 2d 703 (1961).

Defendant was not the owner of the vehicle and, therefore, his mere presence therein did not give him the right of control over the driver: Mazur v. Klewans, 365 Pa. 76, 73 A. 2d 397 (1950). Nor does this family

relationship presumptively make defendant the agent of his father for the purpose of exercising control over the vehicle. Warman v. Craig, 321 Pa. 481, 184 Atl. 757 (1936), held that proof that the driver of the car in question was the owner's son is not sufficient, of itself, to establish an agency relationship, even though the driver-son was also employed by owner-father. The relationship of master and servant must be established and will ordinarily not be presumed solely from a father-son relationship: Markle v. Perot, 273 Pa. 4, 116 Atl. 542 (1922); Kunkle v. Thompson, 67 Pa. Superior Ct. 37 (1917).

Defendant's father testified relative to the arrangements made for the use of his vehicle on the evening of September 6, 1964. He testified that he told Tarquin Shaffer not to drive the vehicle after 11:30 p.m. and thereby wholly rebutted the presumption that the driver of his vehicle was, in fact, driving with his permission at the time of the arrest at 2:30 a.m.

On pages 11 and 12 of the record, the father testified:

"Q. And on September 6, 1964, were you the owner of the automobile in this alleged violation?

"A. I was.

"Q. And at this time, did you give permission for the use of this automobile to anyone.

"A. I gave permission to Tarquin to take Billy wherever he wanted to go but be home at 11:30.

"Q. As far as you were concerned, who was in charge?

"A. Tarquin.

"Q. When you say Tarquin, who do you mean?

"A. Tarquin Shaffer.

"Q. Tarquin Shaffer, the other driver referred to here?

"A. Yes.

"Q. And was this arrangement to provide transportation for your son?.

"A. That's right.

"Q. And to whom was the control of this automobile given?

"A. Tarky.

"Q. Shaffer?

"A. That's right.

"Q. And did you specifically talk to Mr. Shaffer about the use of the car?

"A. Yes. I have always told him to take Billy where he wants to go but I wanted the car home before 11:30.

"Q. Was this arrangement made specifically between you and Mr. Shaffer?

"A. Tarky Shaffer, yes.

"Q. Did you understand that Mr. Shaffer was a juvenile licensee?

"A. I knew he was.

"Q. And did you insist that he be in before midnight?

"A. Before midnight.

"Q. What was the reason for insisting it?

"A. So he wouldn't get in trouble and Billy couldn't drive and I wouldn't want him to get in trouble. That's why I wanted to get him to drive the car.

"Q. Did you make it plain to Mr. Shaffer?

"A. I made it very plain".

As a vehicle owner, defendant's father had the legal right to make whatever arrangements he desired concerning the use and control of the vehicle. From the foregoing testimony, we find that Tarquin Shaffer was given the right of control over the vehicle insofar as the manner of driving was concerned, but that defendant was given the right to control where the vehicle was actually driven. While testifying, the father stated on at least two occasions: "I gave permission to Tarquin to take Billy (defendant) wherever he wanted to go. . ." Also, as some corroboration of this conclusion is the fact that at the time of arrest, defendant had his

father's vehicle registration card in his personal possession.

Our conclusions relative to the driving arrangements existing at the time of arrest are further substantiated by the attendant general circumstances. Every parent worthy of the name is primarily interested in the general welfare of his children, and we think that the father's testimony clearly demonstrates that his sole purpose in attending the hearing was to benefit his son's (defendant's) side of the case and, hopefully, to have his son's (defendant's) driving privileges restored. A father possessed of this mental attitude would most naturally make arrangements so that his vehicle was used primarily for his son's (defendant's) benefit and it is, therefore, reasonable to conclude that the son (defendant) was given the right to determine the use to be made of the vehicle that evening. In actual fact, Tarquin Shaffer was merely the chauffeur for defendant on the early morning of the arrest, the latter being unable to drive because his license was under suspension. It is a general rule that no special formality is required for the creation of a master-servant relationship. It may arise solely by implication: Falconer v. Mazess, 403 Pa. 165, 168 A. 2d 558 (1961).

Defendant and Tarquin Shaffer were friends. The uncontradicted testimony directly establishes that the father has actual knowledge that Shaffer had only a junior license, and it is reasonable to infer that defendant also knew of Shaffer's limited driving privileges.

Under the facts as we have found them to be defendant would have the right to direct that the vehicle be driven home and not operated by the driver after midnight, when it was illegal for him to do so. Under these circumstances, and particularly in the absence of any positive evidence to the contrary, it is plain that the evidence amply supports the charge that defendant

permitted a vehicle under his control to be operated by a person in violation of The Vehicle Code of 1959, as amended.

At the time of hearing, defendant was employed by the Babcock & Wilcox Corporation in Beaver Falls, Pa. He was present at the time of the arrest and also at the time the arrangements were made between his father and Tarquin Shaffer for the use of the vehicle on the evening of September 6, 1964. His unexplained failure to testify in his own behalf compels the conclusion that the testimony would have been unfavorable to him: Williams v. Philadelphia Transportation Company, 415 Pa. 370, 203 A. 2d 665 (1964) ; Haas v. Kasnot, 371 Pa. 580, 92 A. 2d 171 (1952).

In the light of defendant's previous violations of The Vehicle Code, it cannot realistically be contended that the secretary abused his discretion in directing the suspension because of this violation. Defendant's driving record discloses that on July 15, 1963, he was guilty of driving too fast for conditions; that on August 25, 1963, he was guilty of violating section 601 of The Vehicle Code with a resultant suspension of one month; and that on February 24, 1964, he violated section 624(2) of The Vehicle Code, which prohibits the lending of one's operator's license.

Defendant showed through the testimony of his father that a license suspension would cause him economic hardship by precluding his ability to work in Beaver Falls, Pa., his place of present employment. This was the only extenuating circumstance offered by defendant, and it has been held in numerous Supreme Court cases that a court may not revoke the secretary's order of suspension solely on the ground of economic hardship: Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953) ; Commonwealth v. Greer, 373 Pa. 400, 96 A. 2d 376 (1953) ; Commonwealth v. McCullough, 373 Pa. 402, 96 A. 2d 377 (1953) ; Common-

wealth v. Matil, 373 Pa. 404, 96 A. 2d 380 (1953); Commonwealth v. Cornetti, 373 Pa. 407, 96 A. 2d 378 (1953); Commonwealth v. Roher, 373 Pa. 409, 96 A. 2d 382 (1953).

Defendant having failed to produce any evidence sustaining his contention that the suspension of his operator's privileges by the secretary was an abuse of discretion, we make the following:

ORDER

And now, to wit, May 26, 1966, for the reasons stated in the foregoing opinion, the appeal is dismissed. Costs to be paid by defendant. Exception sealed for defendant.