Chanoff, Appellant, v. Fiala.

Argued April 24, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 27, 1970.

*Herbert M. Linsenberg*, with him, *Robert J. Klein* and *Meltzer & Schiffrin*, for appellant.

*James D. Flower*, with him *Myers, Myers, Flower & Johnson*, for appellees.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1970:

This is an action in equity seeking specific performance of an agreement for the sale of real estate, located

in Camp Hill, Pennsylvania, on which the buyer, Chanoff, wished to build a multi-unit apartment project. The portions of the agreement relevant to this dispute are: "8. . . . BUYER shall, within ninety days after execution hereof, make the necessary initial applications for zoning and subdivision approvals for the Apartment Project, and promptly notify SELLER upon the grant or refusal of such permits." "9. Settlement shall . . . not be later than six months after the date of execution hereof, subject to the following provisions of this Paragraph 9. If, after application, BUYER shall not be granted all necessary approvals by the applicable authorities, BUYER shall make settlement within said six-month period or this agreement shall be null and void and the Ten Thousand Dollars ($10,000) [deposit] shall be returned to BUYER; provided, however, that BUYER shall have the right to extend the settlement date for an additional period of three months by making an additional deposit of Ten Thousand Dollars ($10,000) on account of the purchase price, and if such approvals are not obtained within said additional period, BUYER shall make settlement or this Agreement shall be null and void and the total deposit of Twenty Thousand Dollars ($20,000) shall be returned to BUYER." "12. If SELLER is not in default hereunder and BUYER violates or fails to fulfill any of the terms of this Agreement, any money then held by the Realtor in escrow and paid by BUYER on account of the purchase price shall be retained by the SELLER as liquidated damages, which shall be the SELLER'S sole remedy . . ."

The initial applications for zoning and subdivision approval were due, under paragraph eight, supra, by February 1, 1968, but the buyer did not file these applications until March 28. Nevertheless, as the chancellor found, the seller, Fiala, did not object when told of Chanoff's late filing, but merely said that Chanoff should file as soon as possible. In addition, on April

20, Fiala contacted borough officials to urge them to expedite Chanoff's applications.

On April 30, buyer mailed from his office in Philadelphia an uncertified personal check in the amount of $10,000, dated May 1, payable to seller's broker. While May 1 was the last day of the six month period specified in paragraph nine of the agreement, the check was not received until May 2. Seller's broker did deposit the check upon receipt, however, and informed seller of its arrival; the check was honored by the drawee bank on May 3.

On May 4, the Board of Directors of the School District of Camp Hill passed a resolution condemning the land in question. On May 16, seller's attorney wrote buyer informing him that their agreement was null and void because the $10,000 check was not received by May 1. Buyer, however, called seller to settlement on July 17. After seller did not appear, buyer proceeded to sue for specific performance of their agreement; seller cross-claimed for the $10,000 escrow account as liquidated damages for buyer's failure to file the initial applications within ninety days. The chancellor, after finding of facts set out above, held that the agreement was null and void, and that seller was entitled to keep the escrow as liquidated damages. From that decree, buyer has taken this appeal.

At trial the parties vigorously disputed the nature of the agreement, whether it was a "contract" or an "option", and whether "time was of the essence". Seller urges that we consider it an option and that time was of the essence. We will assume, arguendo, that seller is correct, for even if this was an option, we find that it was timely accepted.

An option has been defined as "an unaccepted offer to sell", *Barnes v. Rea*, 219 Pa. 279, 284, 68 Atl. 836, 838 (1908), or "a contract to keep an offer open". *Warner Bros. Inc. v. Proffitt*, 329 Pa. 316, 319, 198 Atl.

56, 57 (1938). Accord 1 Williston on Contracts, §61 A. (3d ed. 1957); Restatement of Contracts, §§24, 46. Accordingly, the offeror is bound when the offer is accepted. In the instant case, buyer mailed to seller a check for $10,000 on the day *before* the offer was due to expire. This was a timely acceptance: " 'Where the use of the mails as a means of acceptance is authorized or implied from the surrounding circumstances, the acceptance is complete by posting the letter in normal mail channels, without more. Restatement, Contracts §66; 1 Williston, Contracts §83 (3d ed. 1957).' " *Felconer v. Mazess*, 403 Pa. 165, 168-69, 168 A. 2d 558, 559 (1961) (footnote omitted) (quoting *Meierdierck v. Miller*, 394 Pa. 484, 487, 147 A. 2d 406, 408 (1959)). Accord *Warner v. Bedell Co.*, 278 Pa. 576, 578, 123 Atl. 490, 491 (1924) (dealing with an option). Indeed, it is clear that use of the mails was at least impliedly authorized in this case; a paragraph of the agreement specifically provides that all notices are to be sent by registered mail, and the parties never met until the day of the trial, transacting their business by mail between two cities located over one hundred miles apart.

Seller argues additionally that the payment was not timely because it was not in "cash or its equivalent". We can find no indication in the agreement, however, that a personal check was not acceptable, particularly in view of the fact that the agreement notes that the initial $10,000 deposit was to be in cash, but does not mention "cash" in connection with the extension. The check was honored by the drawee bank, and we cannot find that the parties excluded the use of a personal check as a means of acceptance.

Accordingly, we hold that buyer, by posting his check in the mail the day before the offer was due to expire, timely exercised his option, and that seller was bound under the agreement.

The second issue in contention is whether seller is entitled to $10,000 liquidated damages for buyer's failure to file the necessary plans within ninety days. The chancellor held: (1) that the filing of the plans within ninety days was not a condition precedent to buyer's accepting the extension of time for settlement, and (2) that seller by not objecting to the lateness, and by contacting borough officials on buyer's behalf, had waived any objections he may have had to the late filing. Nevertheless, the chancellor found that buyer, by not filing on time, had failed to fulfill a term of the agreement, and hence, under paragraph twelve of the agreement, seller was entitled to keep the escrow as liquidated damages.

Seller's position on appeal is that "since time was not of the essence of Buyer's obligation to file within such ninety day period that the defendant [Fiala] could not declare a default of that $10,000.00 until and unless Buyer did not settle within the six month period." Of course, buyer was lulled into not settling by Fiala's own actions in not objecting to the late filing, and in actively seeking to further buyer's applications. But the essence of seller's argument is that the $10,000 liquidated damages would be due only if, because of the late filing, buyer did not get the requisite approvals and hence decided not to settle within the six month period. Indeed, without this paragraph, the agreement could be read to mean that buyer could have done nothing for six months, refused to settle, and still have his deposit returned. Of course, if buyer did settle, with or without the approvals, seller would not be damaged and would not be entitled to the liquidated damages even under his own interpretation of the agreement.

We have held above that buyer's notice to extend the date of settlement for another ninety days was timely given. Within that ninety days buyer called seller to settlement. Accordingly, since buyer has decided to

settle, seller is not damaged by the late filing, and under his own interpretation of the agreement, cannot recover the $10,000 liquidated damages.

It appears that because of the condemnation, seller can no longer convey the land in question. Accordingly, we remand this case to the chancellor so that he may enter an order compelling seller to assign to buyer all of his right, title and interest in and to any award resulting from the taking or condemnation, pursuant to paragraph eleven of the agreement of sale, together with the right to negotiate with the condemning authority, subject only to receipt by seller of the unpaid balance of the purchase price.

The decree of the Court of Common Pleas of Cumberland County is vacated, and the case remanded for further proceedings consistent with this opinion. Each party to bear own costs.

Mr. Justice JONES took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I cannot agree with the Majority Opinion because I am persuaded that the agreement involved was clearly an option contract. And, additionally, contrary to the Majority's view, the rule as to when an acceptance becomes legally operative is not the same in agreements to sell and option contracts. In option contracts, the date of receipt is controlling. See 1A Corbin, Contracts, §264, page 521 (1963).