Robert RUSSOCK, Appellant,

v.

AAA MID–ATLANTIC INSURANCE COMPANY and Citizens Bank, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 11, 2006.
Filed April 3, 2006.
Reargument Denied June 8, 2006.

Thomas Bruno, II, Philadelphia, for appellant.

Daniel S. Bernheim, III, Philadelphia, for Citizens Bank, appellee.

Allan C. Molotsky, Philadelphia, for AAA Mid–Atlantic, appellee.

BEFORE: LALLY–GREEN, GANTMAN, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from a judgment in favor of Appellees, respectively an insurance company and a bank, defendants below in a declaratory judgment action brought to determine Appellant's entitlement to coverage under a policy of automobile insurance issued by Appellee AAA. We reverse.

¶ 2 According to the statement of stipulated facts, in June of 2002 Appellee insurance company issued a policy of automobile insurance on a vehicle rented by Appellant from Honda Lease Trust. Both lessee and lessor were named insureds under the policy. Premium payments were to be made through Checkfree, an on-line remittance service of Appellee bank, pursuant to an agreement with Appellant.

¶ 3 The payment date for renewal of the policy was June 13, 2003. On June 3, 2003, approximately a month after receiving a renewal notice, Appellant electronically requested Appellee bank to issue payment to Appellee insurer through Checkfree in the amount of $214.00, indicating a due date of June 13, 2003. The notice specified that non-payment of $214.00, the minimum amount due to extend/renew coverage, would result in cancellation of the policy effective 12:01 a.m. on June 14, 2003. The notice also announced that receipt of the premium amount must occur on the due date, and advised that five days should be allowed for processing. In fact, Appellee bank, in the Terms and Conditions of its on-line banking Agreement, also advised that payment dates should be scheduled five days prior to the actual payment due date. The premium check was issued and mailed from Appellee bank's Columbus, Ohio facility on June 10, 2003, to Appellee insurer's Philadelphia post office box. It was then transported to a processing facility in New Jersey, arriving there on June 17, 2003, on which date a cancellation confirmation was issued to Appellant and Honda Lease. The payment was credited to Appellant's policy on June 18.

¶ 4 On June 20, 2003, Appellant became involved in a collision resulting in extensive damage to both his vehicle and that of the other driver. On the same date he reported the accident to Appellee insurer. Thereafter, Appellant received the cancellation notice from Appellee insurer, which, despite having cancelled Appellant's policy, nevertheless cashed his premium check. This action was instituted on stipulated facts, and the non-jury trial resulted in a judgment for Appellees. Appellant's motion for judgment notwithstanding the verdict was denied, and this appeal followed.

¶ 5 We first note that [a] JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the competent evidence admitted to decide if there was

sufficient competent evidence to sustain the verdict.... Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact... A JNOV should be entered only in a clear case.

*J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 679–80 (Pa.Super.2002), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003) (quoting *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304–05 (Pa.Super.1999)). "An appellate court will reverse a trial court's ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case." *Scott v. Southwestern Mutual Fire Association*, 436 Pa.Super. 242, 647 A.2d 587, 590 (1994), *appeal denied*, 539 Pa. 694, 653 A.2d 1232 (1994).

■ ¶ 6 Appellant has ostensibly presented five claims on appeal challenging the trial court's conclusions that his insurance renewal was not timely submitted, that the payment was not received when mailed, that the notice of cancellation on the renewal bill was not improper, that the leasing company's coverage continued for ten days beyond that of Appellant, and that Appellee bank was not responsible for the untimely payment. Of these, the first two, which concern the court's rulings as to the timeliness of the renewal payment, are iterations of essentially the same argument and are premised on the mailbox rule, i.e., that a payment is deemed received on its mailing date. Here, Appellant asserts that Appellee insurer required premiums to be submitted by mail, the check was duly mailed prior to the payment date, and thus payment was made when the check was posted.

¶ 7 The trial court based its finding that the mailbox rule is inapplicable almost wholly on this Court's unpublished and therefore non-precedential memorandum in *Shah v. Anthem Casualty Insurance*, No. 161 EDA 2002, 815 A.2d 1139 (Pa.Super. October 24, 2002), which distinguished our Supreme Court's decision in *Chanoff v. Fiala*, 440 Pa. 424, 271 A.2d 285 (1970), and this Court's application of the *Chanoff* holding in *Pennsylvania Academy of Fine Arts v. Grant*, 404 Pa.Super. 62, 590 A.2d 9, 10 (1991). The *Shah* Court based its differentiation on the language of the notice in that case which specified the necessity for receipt, rather than mailing of payment, as the crucial event. This same explanation is advanced by the trial court here. However, the *Chanoff* Court held that "[w]here the use of the mails as a means of acceptance is authorized or implied from the surrounding circumstances, the acceptance is complete by posting the letter in normal mail channels without more." *Id.* at 287 (quoting *Falconer v. Mazess*, 403 Pa. 165, 168 A.2d 558, 559 (1961)).

¶ 8 Here use of the mails to submit premiums was not merely authorized, but required. The *Chanoff* decision has never been disturbed. Thus the trial court did, in fact, err in its conclusions as to the timeliness issue with respect to both the mailbox rule and the significance of the payment notice language.

■ ¶ 9 As to Appellant's next claim, that the trial court erred in finding proper the warning of cancellation on the insurance renewal bill, here, too, the trial court finds the language of the cancellation notice to be self proving. Appellant claims that the bill was, in effect preemptive, noticing cancellation prior to nonpayment, and is therefore violative of 31 Pa.Code § 61.10(h), which states that

[m]ere nonpayment of the premium by the insured shall not be considered [overt] action [exhibited by the insured to the insurer of an intention to cancel/not renew]. Some more affirmative act on the part of the insured shall be necessary, such as a statement by the insured that he does not want his policy to be renewed or an obtaining by the insured of another policy which he intends shall supersede his current policy.

Appellant contends that he took overt action demonstrating his intention to renew by telephoning Appellee insurer in May after receiving the bill to report an anticipated change of address from Pennsylvania to Virginia.

¶ 10 The trial court rejected Appellant's argument, reasoning that neither the Code section nor the applicable insurance law section [1] "prohibits cancellation and/or termination where the insured exhibits overt actions that he wishes to renew the policy." (Trial Ct. Op. at 17). Rather, "said sections except from the statutory scheme regarding cancellation and notification the opposite situation where the insured exhibits overt action that he does not wish to renew the policy." (*Id.*). In reaching its conclusions, the trial court relied on the Commonwealth Court's examination of the pertinent statutes in *Beitler v. Commonwealth of Pennsylvania Department of Transportation*, 811 A.2d 30 (Pa.Cmwlth. 2002), *appeal denied*, 576 Pa. 714, 839 A.2d 353 (2003). There, as the court notes, a distinction was drawn between the termination of a policy during its term, and termination at its twelve month anniversary; only the former requires notice, and the instant action the latter.

 ¶ 11 However, we are not bound by decisions of the Commonwealth Court. *Signora v. Liberty Travel, Inc.*, 886 A.2d

284, 291 (Pa.Super.2005). Further, in *Federal Kemper Insurance Company v. Commonwealth Insurance Department*, 509 Pa. 1, 500 A.2d 796 (1985), our Supreme Court defined the circumstances constituting an effective cancellation under Pennsylvania law as requiring an insurer to show both the insured's knowledge that a premium is due, and his specific refusal to pay it. *See also Blasy v. Chester County Mutual Insurance Company*, 401 Pa.Super. 344, 585 A.2d 493, 495 (1990). Indeed, where the cancellation of a policy is advanced as an affirmative defense, "[t]he crux of the insurer's burden turns on whether it can prove that the insured had a clear and precise intent to cancel the policy prior to the loss." *Scott, supra* at 590.

¶ 12 We find that those conditions, i.e., knowledge of payment due and refusal to pay, do not exist where, as here, arrangements for payment are made, the payment itself is placed in transit to the payee who has dictated the method of transport, and the check is cashed. There is nothing to demonstrate intent to cancel or not renew on Appellant's part, rather the contrary. Thus, here, too, the trial court erred.

¶ 13 Given our conclusion of trial court error as to Appellant's first two claims, we decline to address those remaining. Accordingly, the judgment is vacated.

¶ 14 Judgment vacated.

1. 40 P.S. § 991.2002(c).